Marc Van Der Hout (California Bar # 80778)
Beth Feinberg (California Bar # 240857)
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
San Francisco, California 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Petitioner
Djafar SHAMS

E-Filing

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Djafar SHAMS

    Petitioner,

    v.

Michael CHERTOFF, in his Official Capacity, Secretary, Department of Homeland Security; Alberto GONZALES, in his Official Capacity, Attorney General, Department of Justice; Nancy ALCANTAR, in her Official Capacity, Field Office Director, San Francisco, California, U.S. Bureau of Immigration and Customs Enforcement; and David SEPULVEDA, in his Official Capacity, Facility Commander, Santa Clara County Jail

    Respondents.

Case No. C 07 2463 SBA

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 22 U.S.C. § 2241**

*IMMIGRATION CASE*

DHS No. A 078-670-244

## INTRODUCTION

1. Petitioner Djafar SHAMS ("Petitioner"), by and through his undersigned counsel, hereby petitions this Court for a writ of habeas corpus to remedy his indefinite detention in immigration custody by Respondents.

2. Petitioner was ordered removed from the United States to Iran on June 16, 2003. He has fully cooperated with all efforts to effectuate his removal, but the Iranian government has steadfastly refused to issue him travel documents. Petitioner was taken into custody on October 27, 2006, and has been detained by Respondents since that date at the Santa Clara County Jail in San Jose California, pursuant to 8 U.S.C. § 1231(a)(6).

3. Petitioner's detention has now exceeded the six month period that was established by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 701 (2001), and there is no significant likelihood that he will be removed in the reasonably foreseeable future. In continuing to detain him indefinitely, Respondents have violated the Immigration and Nationality Act, as well as Petitioner's Fifth Amendment right to Due Process. See id. at 690. See also 8 U.S.C. § 1231(a). Intervention by this Court is now necessary to obtain Petitioner's release.

## JURISDICTION

4. This action arises under the United States Constitution, the Immigration & Nationality Act of 1952, as amended, 8 U.S.C. §§ 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 et seq.; Art. I, § 9, Cl. 2 of the United States Constitution ("Suspension Clause"); and the common law. See Zadvydas v. Davis, 533 U.S. at 687; INS v. St. Cyr, 533 U.S. 289 (2001). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, as Petitioner is presently being held in custody under color of the authority of the United States, in violation of the Constitution, laws, or treaties of the United States.

5. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651.

6. Petitioner has exhausted all administrative remedies to the extent required by law.

## VENUE

7. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents are employees or officers of the United States, acting in their official capacity, and an agency of the United States; because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California; because Petitioner and Respondents Nancy Alcantar, Edward Flores, and David Sepulveda, who are responsible for holding Petitioner in custody, reside in the Northern District of California, and there is no real property involved in this action. Venue is additionally proper in this Court pursuant to the Supreme Court's decision in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-94 (1973) (noting that "traditional venue considerations" for the purposes of a habeas petition under 28 U.S.C. § 2241 include (1) the location where material events took place, where records and pertinent witness are likely to be found, (2) the convenience of the forum for respondent and petitioner; and (3) the familiarity of the court with the applicable laws).

## INTRADISTRICT ASSIGNMENT

8. Assignment to the San Jose Division of this Court is proper under N.D. Rule 3-2(c) and (e) because a substantial part of the events which give rise to the instant claim have taken place in Santa Clara, California.

## PARTIES

9. Petitioner Djafar SHAMS is a 57-year-old native and citizen of Iran, who has been residing in the United States since 2000. Petitioner submitted an affirmative application for asylum and withholding of removal on December 4, 2000, which was referred to an Immigration Judge on January 31, 2001. The Immigration Judge denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on June 19, 2002. This denial was upheld by the Board of Immigration Appeals on June 16, 2003, at which point Petitioner's removal order became final. Petitioner was taken into immigration custody on

October 27, 2006, and has remained there ever since. The length of his detention has exceeded six months and his removal is not reasonably foreseeable

10. Respondent Michael CHERTOFF is sued in his official capacity as the Secretary of the Department of Homeland Security. In that capacity, he has responsibility for the administration and enforcement of the immigration laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. 296, 116 Stat. 2135 (Nov. 25, 2002), and therefore has custodial authority over Petitioner.

11. Respondent Alberto GONZALES is sued in his official capacity as the Attorney General of the United States and as the head of the United States Department of Justice. In that capacity, he has the ultimate authority over the immigration court system and the Board of Immigration Appeals. 8 U.S.C. § 1103.

12. Respondent Nancy ALCANTAR is sued in her official capacity as the Field Office Director of the United States Bureau of Immigration and Customs Enforcement ("ICE") in San Francisco, California. In that capacity, she is responsible for the initiation of removal proceedings and the execution of removal orders for non-citizens within the jurisdiction of the San Francisco fielICE Field Office. She also has the authority to determine whether individual aliens who are subject to final removal orders should be detained in immigration custody or released, and in this case issued the Notice of Revocation of Release. See Declaration of Marc Van Der Hout ("Van Der Hout Dec.") at Exhibit ("Exh.") K. She therefore has custodial authority over Petitioner.

13. Respondent David SEPULVEDA is sued in his official capacity as the Facility Commander of the Santa Clara County Jail, where Petitioner is presently being held in immigration detention. He therefore has custodial authority over Petitioner.

## FACTUAL BACKGROUND

14. Petitioner is a 57-year-old native and citizen of Iran, who has been residing in the United States since 2000. Petitioner first entered the United States in April 2000, as a nonimmigrant visitor for pleasure. See id. at Exh. B. Although raised as a Muslim, Petitioner later became interested in Christianity, began attending a Christian church in the United States, and was

baptized as a Christian in October 2000. Id. at Exh. A. Already fearful of returning to Iran due to past persecution, Petitioner's conversion to Christianity caused him to have even more fear that he would be persecuted if he returned to Iran, on account of having left the Islamic religion. Id. Consequently, Petitioner submitted an affirmative application for asylum and withholding of removal on December 4, 2000, which was referred to the Immigration Judge on January 31, 2000 for a hearing. Id.

15. Removal proceedings were commenced against Petitioner on January 30, 2000 with the service of a Notice to Appear, charging him as removable for remaining in the United States for a time period longer than permitted, pursuant to 8 U.S.C. § 1227(a)(1)(B). Id. at Exh. B. On June 19, 2002, Petitioner's applications for asylum, withholding of removal, and relief under CAT were denied by the Immigration Judge. Id. at Exh. C. On June 16, 2003, the Board of Immigration Appeals dismissed Petitioner's appeal of the Immigration Judge's decision, at which point Petitioner's removal order became final. Id. at Exh. D. Defendant Alcantar issued a surrender notice to Petitioner on December 2, 2003, ordering that he report for removal on January 14, 2004. Id. at Exh. E.

16. On January 10, 2004, Petitioner applied for a stay of removal due to two operations he had recently undergone to correct a heart condition. The stay request was approved by Defendant Alcantar on February 2, 2004. Id. at Exh. F.

17. In March 2004, in preparation for returning to Iran upon recovering from surgery, Petitioner mailed his passport, which had expired on June 6, 2001, to the Iranian Interest Section in Washington, D.C., requesting that the Interest Section issue him a new passport. Id. at Exh. G. Despite repeated inquiries to the Embassy of Pakistan Interests Section of the Islamic Republic of Iran ("Iranian Interest Section"), Petitioner has been unable to locate the expired passport that he mailed in, and has not received a new passport or any other travel document. Id. at Exh. P.

18. On June 15, 2004, Petitioner requested an extension to his stay of removal, explaining his reason for the request as follows: "I mailed an application for a passport to the Embassy of Iran in March, 2004. I haven't received my passport yet. ... A copy of the Fedex receipt is attached." Id.

at Exh. G. On October 5, 2004, Defendant Alcantar denied Petitioner's request, but acknowledged that Petitioner "had not yet received a renewed passport or travel document from the Iranian Embassy." Id.

19. On December 15, 2004, Petitioner Alcantar issued an "Order of Supervision" to Petitioner, requiring that he comply with an enumerated list of conditions, including that he assist Immigration and Customs Enforcement ("ICE") in obtaining any necessary travel documents. Id. at Exh. H. An Addendum to the Order of Supervision also required Petitioner to "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document," and "written responses from the Embassy or Consulate regarding [his] request." Id. Petitioner fully complied with all conditions listed in the Order of Supervision.

20. On July 18, 2005, Petitioner's mother, Azizeh Rahaei, who is a naturalized United States citizen, filed an Immigrant Petition for Relative (Form I-130). Id. at Exh. I. That petition is still pending with the United States Citizenship and Immigration Service. Id.

21. On September 23, 2006, Petitioner married his long-time girlfriend, Homa Soroor, who is a naturalized United States citizen. Id. at Exh. J. On October 22, 2006, Ms. Soroor filed an Immigrant Petitioner for Relative (Form I-130) on Petitioner's behalf, and Petitioner filed an Application to Register Permanent Residence or Adjust Status (Form I-485). Id. The Immigrant Petition is still pending with the United States Citizenship and Immigration Service. Id.

22. On October 25, 2006, Petitioner filed an Application for Stay of Removal (based on his marriage and his wife's pending I-130 visa petition and his pending I-485 application), which was denied on October 31, 2006. Id. at Exh. K.

23. Despite having fully complied with his Order of Supervision, Petitioner was taken into immigration custody on October 27, 2006. Id. at Exh. L. On October 31, 2006, Respondent Alcantar issued a Notice of Revocation of Release, stating that Petitioner had been taken into custody because he had not yet obtained a valid passport. Id.

24. On January 9, 2007, Petitioner filed a Request for Release from Custody with Respondent Alcantar in anticipation of his 90-day custody review on January 27, 2007. Id. at

Exh. M  In support of his request, Petitioner submitted numerous declarations from his United States citizen family members, friends, and members of his religious community, attesting to the fact that he would pose neither a danger to the community nor a flight risk upon release from detention. Id.

25. On January 31, 2007, the Iranian Interest Section sent a letter to the Office of Detention and Removal Operation of the Department of Homeland Security, stating that it is unable to issue an Iranian travel document to Petitioner until he submits an original Iranian birth certificate. Id. at Exh. N. Petitioner is not in possession of his original Iranian birth certificate. Id. at Exh. P. His wife, sister, and mother in California, as well as his daughters in Iran, have all searched exhaustively for the birth certificate, but have been unable to locate it. Id. Petitioner has no idea where an original copy of his birth certificate is and, as far as he is aware, is unable to obtain an original copy without traveling to Iran to apply for one in person. Id. He is, therefore, trapped in a Catch-22 situation, inasmuch as he is unable to obtain a travel document to be able to effectuate travel to Iran because he does not have an original birth certificate, but can only obtain that original birth certificate by appearing personally in Iran.

26. On February 2, 2007, ICE issued a Decision to Continue Detention, providing as its only reasoning that: "(1) The Agency is actively pursuing a travel document for your Removal; [and] (2) On 01/26/07 you were interviewed by the Pakistan Embassy, Interests Section, Islamic Republic of Iran." Id. at Exh. O. The Decision also stated that if Petitioner was not released from custody or removed from the United States by April 22, 2007, his case would be forwarded to the Headquarters Post Order Unit ("HQPDU") in Washington, D.C. Id. To date, Petitioner has received no communication from the HQPDU regarding his case.

27. On February 2, 2007, Petitioner submitted a Renewed Request for Release from Custody to Respondent Alcantar, documenting the physical and emotional distress that Petitioner's ongoing detention is causing his United States citizen wife, sister and elderly mother. Id. at Exh. P.

28. In early February, 2007, in an undated Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, Petitioner was instructed to "disclose to the agency the location of your original Iranian birth certificate and passport. If you claim your passport was sent to the Pakistain [sic] Embassy Interest Section Isalamic [sic] Republic of Iran, you must provide the Agency with evidence and circumstances of such claim." Id. at Exh. O.

29. On February 9, 2007, Petitioner responded to the instruction and submitted another Renewed Request for Release from Custody. Id. at Exh. Q. In support of that request, Petitioner's sister, Mahnaz Shams Depp, submitted a declaration stating that she and Petitioner sent Petitioner's passport to the Iranian Interest Section in after being instructed to do so by an immigration official in January 2004, but that she did not recall whether they sent it via Federal Express or via registered mail through the U.S. Postal Service. Id. Ms. Depp further stated that she contacted Federal Express in an attempt to obtain tracking records, but was told that they only keep tracking records for 18 months, and no longer have records from that far back. Id. Ms. Depp also stated that, despite best efforts, she has been unable to locate any receipts (or other evidence) of her mailing the passport to the Iranian Interest Section, and has also been unable to obtain an original birth certificate for her brother. Id. Petitioner's wife, Homa Soroor, also submitted a declaration describing her exhaustive efforts to locate evidence of Petitioner's mailing of his passport to the Iranian Interest Section, and to locate his original birth certificate, but has been unable to find either the birth certificate or evidence of the mailing of the passport Id.

30. Petitioner has absolutely no criminal record of arrests or convictions. His continued detention has caused – and continues to cause – immediate and irreparable harm, both to himself and to his United States citizen wife, sister, and elderly mother.

31. Despite Petitioner's (and, presumably, DHS') repeated requests to the Iranian Interest Section to issue a travel document, neither Petitioner nor DHS has been able to make any apparent progress in obtaining an Iranian travel document for Petitioner. There is no significant likelihood that he will be removed to Iran in the reasonably foreseeable future. Petitioner remains detained unlawfully in DHS custody.

## STATUTORY AND REGULATORY FRAMEWORK

32. Petitioner is in custody pursuant to 8 U.S.C. § 1231(a), which governs the detention, release, and removal of aliens who have been ordered removed.

33. 8 U.S.C. § 1231(a)(2), which was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), amended the Immigration and Nationality Act to require that certain aliens who have been ordered removed must be detained during a 90-day removal period, which begins on the date when the removal order becomes administratively final.

34. 8 U.S.C. § 1231(a)(3) provides for release from detention after the 90-day removal period, subject to an order of supervision. Specifically, the statute provides as follows:

> Supervision after 90-day period. – If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3) (2007).

35. 8 U.S.C. § 1231(a)(6) allows the Attorney General to continue to detain certain individuals beyond the 90-day removal period in limited circumstances. Specifically, the statute provides as follows:

> Inadmissible or criminal aliens. – An alien ordered removed who is inadmissible under section 212 [8 U.S.C. § 1182], removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) [8 U.S.C. §§1227(a)(1)(C), (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (2007).

36. Although 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain certain aliens beyond the 90-day removal period, it does not authorize detention beyond a presumptively

Petition for Writ of Habeas Corpus    8    Case No. _____

reasonable 6 month period where there is no significant likelihood of removal in the reasonably foreseeable future. See Zadvydas v. Davis, 533 U.S. at 701. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances...." Id. at 699-700.

## CONSTITUTIONAL FRAMEWORK

37. All aliens who are present in the United States, regardless of their immigration status, are entitled to due process of law under the Fifth Amendment of the U.S. Constitution. See id. at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted); Plyer v. Doe, 457 U.S. 202, 210 (1987) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.").

38. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).

## CAUSES OF ACTION

### COUNT ONE
### (VIOLATION OF IMMIGRATION AND NATIONALITY ACT)

39. The allegations contained in paragraphs 1 through 38 above are repeated and realleged as though fully set forth herein.

40. Petitioner has already been detained by Respondents beyond the presumptively reasonable six month period, as established by Zadvydas v. Davis, supra. This detention is unlawful under the Immigration and Nationality Act because there is no significant likelihood that

Petitioner will be removed from the United States in the reasonably foreseeable future. See 8 U.S.C. § 1231(a)(6). The Iranian Interest Section has already stated that it will not issue a travel document to Petitioner unless he is able to produce documents that he simply does not have. The Iranian Interest Section has steadfastly maintained this position for years, despite repeated requests and good faith efforts at cooperating by Petitioner and, presumably, attempts also by Respondents to obtain such documents. Petitioner will remain detained indefinitely absent intervention by this Court because Respondents have set an impossible hurdle for him to overcome – the submission of documents that he has no way of locating – in order to secure his release.

41. Moreover, Petitioner has submitted ample documentation to Respondents, evidencing that he would neither pose a flight risk nor a danger to the community upon his release. Thus, Respondents have violated 8 U.S.C. § 1231(a)(6) in continuing to detain Petitioner under these circumstances.

## COUNT TWO
## (FIFTH AMENDMENT DUE PROCESS)

42. The allegations contained in paragraphs 1 through 38 above are repeated and realleged as though fully set forth herein.

43. All persons residing in the United States are protected by the Due Process Clause of the Fifth Amendment which provides for, inter alia, freedom from bodily restraint.

44. Respondent's continued – and indefinite – detention of Petitioner violates his right to substantive due process by depriving him of this fundamental liberty interest. The Due Process Clause of the Fifth Amendment further requires that any deprivation of liberty be narrowly tailored to serve a compelling government interest. Although Respondents clearly have an interest in effectuating Petitioner's removal, his detention beyond the presumptively reasonable 6 month period established by Zadvydas, supra, no longer serves that interest where, as here, there is no significant likelihood that he will be removed in the reasonably foreseeable future. Thus, he is currently being indefinitely detained in violation of his right to substantive due process.

## COUNT THREE
## (FIFTH AMENDMENT PROCEDURAL DUE PROCESS)

45. The allegations contained in paragraphs 1 through 38 above are repeated and realleged as though fully set forth herein.

46. The procedural Due Process requirement of the Fifth Amendment entitles a person to be heard at a meaningful time and in a meaningful manner regarding a deprivation of liberty. The process that is due depends upon the private interest affected by the official action, the risk of erroneous deprivation of the interest, the value (if any) of additional or substitute procedural safeguards, and the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements would impose. Matthews v. Eldridge, 424 U.S. 319, 333 (1976).

47. Here, the private interest affected by Respondents' actions is of the highest importance, namely, a fundamental liberty interest in being free from physical restraint. Procedural due process requires a meaningful custody hearing before an independent and impartial adjudicator. Petitioner has been denied the opportunity for any hearing at all to demonstrate that his detention is unlawful under 8 U.S.C. § 1231(a)(6). In addition, the decision to continue to detain Petitioner has been made by Respondents, who are certainly not the independent and impartial adjudicators that comportment with the Fifth Amendment requires. Petitioner has now submitted three requests for release to Respondents, and documented that both he and his family have made all possible good faith efforts to secure the necessary travel documents to effectuate his removal. There is no administrative procedure in place that requires Respondents to make a decision on Petitioner's detention in any reasonable amount of time, or to ensure that Respondents' actions are in compliance with the Supreme Court's mandate in Zadvydas v. Davis, supra. Thus, Respondents' failure to provide Petitioner with a meaningful opportunity to challenge his detention before independent and impartial adjudicators violates his right to procedural due process under the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1) issue an Order granting Petitioner's Petition for Writ of Habeas Corpus and directing Respondents to immediately release Petitioner from custody;

(2) award Petitioner his reasonable costs and fees; and

(3) grant any other and further relief that this Court may deem fit and proper.

Dated: May 8, 2007

Marc Van Der Hout
Beth Feinberg
VAN DER HOUT, BRIGAGLIANO
& NIGHTINGALE, LLP
180 Sutter St., Fifth Floor
San Francisco, CA 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

By: _____
Marc Van Der Hout

Attorney for Petitioner