# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **Receipt Number:**<br><br>MSC-07-024-13736 | **Case Type:**<br><br>I-130 - Petition for Alien Relative |

| | | |
|---|---|---|
| **Received Date:**<br>October 22, 2006 | **Priority Date:** | **Petitioner:**    A022405445<br><br>SOROOR, HOMA |
| **Notice Date:**<br>October 26, 2006 | **Page         1 OF 1** | **Beneficiary:**    A078670244<br>SHAMS, DJAFAR |

| | |
|---|---|
| HOMA SOROOR<br>5951 SUNMIST DRIVE<br>YORBA LINDA  CA  92886 | **Notice Type:**         Receipt Notice<br><br>**Amount Received:**         $190.00 |

The above application/petition has been received.  Please notify us immediately if any of the above information is incorrect.  Information about your local office processing times may be obtained by calling the NCSC at 1-800-375-5283.  If you find it necessary to contact this office in writing, you must include a copy of this receipt notice with your inquiry.

If you have questions, you may call the BCIS National Customer Service Center at 1-800-375-5283.  For TDD hearing impaired assistance, please call 1-800-767-1833.

If you have Internet access, you can visit the Bureau of Citizenship and Immigration Services website at  www.BCIS.gov where you can find valuable information about forms, filing instructions, and immigration services and benefits.

U S BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES
P.O. Box 648005
Lee's Summit, MO  64064
National Customer Service Center: 1-800-375-5283



5220770                    0004025680                    Form I-797C (Rev. 01/31/05) N

# Case Status Search

Receipt Number:    msc0702413736

Application Type:    I130, IMMIGRANT PETITION FOR RELATIVE, FIANCE(E), OR ORPHAN

Current Status:
Case received and pending.

On October 26, 2006. we received this I130 IMMIGRANT PETITION FOR RELATIVE, FIANCE(E), OR ORPHAN, and mailed you a notice describing how we will process your case. Please follow any instructions on this notice. We will notify you by mail when we make a decision or if we need something from you. If you move while this case is pending, call customer service. We process cases in the order we receive them. You can use our processing dates to estimate when yours will be done. This case is at our NATIONAL BENEFITS CENTER location. Follow the link below to check processing dates. You can also receive automatic e-mail updates as we process your case. Just follow the link below to register.

———————————————————————

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact Customer Service at (800) 375  5283 or 1-800-767-1833 (TTY).

EXHIBIT K

OMB APPROVAL NO. 1115-0055

U.S. Department of Justice
Immigration and Naturalization Service

# Application for Stay of Deportation or Removal

Fee Stamp
DEC27/06 002#42853 $FR-PC
I-246        $155.00

## SUBMIT IN DUPLICATE
*Read instructions on reverse before filling out application*

File No.  A78 670 244

Date     October 2√, 2006

| | |
|---|---|
| **1. Name** (Family Name in CAPITAL letters, First, Middle)<br>SHAMS, Djafar | |

**2. Present Address** (Apt. No.)     (Number and Street)     (Town or City)     (State)     (Zip Code)
5951 Sunmist Drive,   Yorba Linda,   California 92886

| | |
|---|---|
| **3. Country of Citizenship**<br>IRAN | **4. Date to which passport is valid** (Attach passport)<br>I have no passport yet. |
| **5. Country to which deportation or removal has been ordered**<br>IRAN | **6. Date to which stay of deportation or removal is requested**<br>until decision on my filed "IR" I-130/485 |

**7. Reasons for requesting stay of deportation or removal**

My long-time USA citizen girlfriend (with whom I reside) and I have recently married.

We have filed with the Service for my permanent residency and there is no reason why

such should not be approved. Because of the specific danger to me in IRAN, it is

impossible for me to return to that country and await approval of the permanent resi-

dency case. For similar reasons, my wife cannot travel to IRAN either. Thus, for human-

itarian reasons, I ask that you stay my removal until the status adjustment has been

adjudicated fully.

**8.** I certify that the statements I have made in this application are true and correct to the best of my knowledge and belief.

*DJBy*                    Santa Ana, California              10-24-06
(Signature)                   (Location)                      (Date)

**9. Signature of person preparing form, if other than applicant.**
I declare that this document was prepared by me at the request of the applicant and is based on all information of which I have knowledge. Failure by a preparer to complete this block may result in criminal prosecution and, upon conviction, a fine or imprisonment.

                        John L. Minnella                  10-24-06
(Signature)                  (Printed Name)                    (Date)

J.L. MINNELLA & ASSOCIATES
Tel 714/543-9005; Fax 714/543-9006
1010 North Ross Street, Suite 100

## APPLICANT: DO NOT WRITE BELOW THIS LINE

Stay  ☐ Denied  ☐ Granted _____   at  San Francisco, CA
                          (Date)                    (Place Where Granted)

By _____   Field Office Director   David   10/27/06
        (Signature)                    (Title)                  (Date)

Form I-246 (Rev. 09/19/00)Y

In Re: Djafar SHAMS, A78 670 244
I-246 Stay of Deportation or Removal Application
Attachment/Continuation Sheet

This Application is based upon the:

1. marriage of Djafar Shams ("Djafar") with his longtime, USA citizen/resident fiancé, Homa SOROOR ("Homa") including her 8 CFR secs. 204.2(a)(1)(iii)(A) & (B) Bona Fide Marriage Exemption Request (copy of her naturalization certificate and their marriage certificate attached);

2. the recent filing by of Homa of an Immediate Relative Petition for her husband, Djafar (copy of the postal receipt is attached);

3. the contemporaneous filing by Djafar of a Status Adjustment Application (copy of the postal receipt is attached);

4. the likelihood the petition and application will be adjudicated and approved quickly by the Service; and

4. the full cooperation Djafar has provided during the period of his Service Order of Supervision.

A stay to allow an appropriate period for Service consideration of these is necessary and appropriate, especially in a case such as this where:

1. the alien has no criminal or other negative record;

2. the alien and his wife will suffer great detriment if not allowed to remain during these considerations because:

A. his deportation or removal is back to Iran, about 10,000 miles away;

B. he is not admissible to any other country;

C. he is a convert of six years from Islam to Christianity (evidence attached), a capital offense in Iran and many Moslem countries; it is probable that his apostasy would be discovered and result in his arrest and execution;

D. his wife has a significant business in Orange County, California which she personally operates and manages, which employs thirteen USA citizens and legal residents, which Djafar now works for as well; and which she cannot leave for any extended period to be with her husband, Djafar;

E. Homa too cannot reside in Iran for political, familial and religious reasons.

EXHIBIT L

# ORDER TO DETAIN OR RELEASE ALIEN

| | | | | | |
|---|---|---|---|---|---|
| TO: (NAME and TITLE of Person in Charge of Facility) OIC | | | | | |
| (Name of Facility) | | | | | |
| Please ☒ Detain ☐ Release | | | | Date 10/27/06 | Time |
| Name of Alien SHAMS, Djafar | | | | File Number A78 670 244 | |
| Age 57 | Date of Birth (Mo./Day/Yr.) 9/5/1949 | Sex M | Nationality IRAN | Foreign Address | |
| Nature of Proceedings FINAL ORDER | | | Signature of Officer Receiving Alien | | |

REMARKS:
HGT: 5'8"
WT: 160
EYES: BLK
HAIR: BLK

HEART MEDS
NON CRIM

(b)(7)(c)

| Signature of Officer Authorizing Action | Title | Office |
|---|---|---|
| | D.O. | SFR |

Form I-203 (Rev. 7-15-78) Y

UNITED STATES DEPARTMENT OF JUSTICE—Immigration and Naturalization Service

U.S. GOVERNMENT PRINTING OFFICE

# RECORD OF DEPORTABLE ALIEN

(See A.M. ~2790.31 - 34 for instructions)

| Family Name (Capital Letters)    Given Name    Middle Name | Sex | Hair | Eyes | Complexion |
|---|---|---|---|---|
| SHAMS, Djafar | male | blk | blk | med |

| Country of Citizenship | Passport Number and Country of Issue | A-File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| Iran | | A78 670 244 | 5'8 | 160 | |

| U.S. Address    (Residence)    (Number)    (Street)    (City)    (State)    (Zip Code) | Scars or Marks |
|---|---|
| 5951 Sunmist Dr., Yorba Linda, CA 92886 | |

| Date, Place, Time, Manner of Last Entry | Passenger boarded at | F.B.I. No. | Marital Status |
|---|---|---|---|
| 04/26/2000, SFR, B2 | | | married |

| Number, Street, City Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| | |

| Birthdate | Date of Action | Location Code | (AtNear) | (date/hour) |
|---|---|---|---|---|
| 09/05/1949 | 10/27/2006 | SFR | SFR | 10/27/2006 |

| City, Province (State) and Country of Birth | AR | Form (Type & No.) | Lifted | By |
|---|---|---|---|---|
| Iran | ☐ | ☐ Not Lifted | ☐ | |

| Visa Issued At- NIV No. | Social Security Account Name | (b)(7)(c) | Status at Entry | Status When Found |
|---|---|---|---|---|
| | | | B2 | final order |

| Date Visa Issued | Social Security No | Send C.O. Rec. Check  To: | Length of Time Illegally in U.S |
|---|---|---|---|
| | | | three years |

| Immigration Record | Criminal Record |
|---|---|
| Ordered removed 06/13/2003 | none found, claims none |

| Name, Address, and Nationality of Spouse (Maiden Name, if appropriate) | Number & Nationality of Minor Children |
|---|---|
| Homa Soroor, same as above, natz USC | |

| Father's Name | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| | |

| Monies Due/Property in U.S. Not in Immediate Possession  ☒ None Claimed  ☐ See form I-43 | Fingerprinted  ☒ Yes  ☐ No | | Deportation Charge(s) (Code Words)  R1C1 |
|---|---|---|---|

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment    (b)(7)(e) | Salary  $_____ hr | From: | To: |
|---|---|---|---|---|

Narrative (Outline particulars under which alien located/apprehended. Include details not shown above, re time, place manner of last entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel in interior) Alien has been advised of communication privileges pursuant to 8 CFR 242.2(e):

See attached G-166.

| DISTRIBUTION    (b)(7)(c) | Received (subject and document)(report of interview) from  Officer: |
|---|---|
| | Deportation Officer |
| | Disposition |

Form I-213 (Rev. 4-16-79) Y UNITED STATES DEPARTMENT OF JUSTICE  Immigration and Naturalization Service



**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

---

SFR DRO 50/10

*Office of the Field Director*                    630 Sansome Street, Room 590
                                                  *San Francisco, CA 94111*

**SHAMS, Djafar**                                 **A78 670 244**
In Agency Custody

### Notice of Revocation of Release

    This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview, in light of your failure to abide by one or more conditions of your prior order of supervision dated December 14, 2004.

    On several occasions upon reporting under your Order of Supervision, you have been told to increase your efforts to obtain a valid passport. August 23, 2006 you were told to bring in a valid passport of risk being taken into custody. Upon your next reporting date of September you were again warned that you would be taken into custody upon your next reporting if you provided no travel document. On October 26, 2006 your new wife called your case office to inform the Agency of your move to Southern California and you request to begin reporting to an ICE office there. These actions lead the Agency to believe that no attempts are being made on your part to obtain a travel document. This represents a direct violation of conditions of the Order of Supervision.

    Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.

    You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with this agency's efforts to remove you by taking whatever actions ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

Nancy Alcantar, Field Office Director                    10/31/06
Signature and Title of Deciding Official                 Date

EXHIBIT M

# Van Der Hout, Brigagliano & Nightingale, LLP

Marc Van Der Hout
Christine Brigagliano
Zachary Nightingale
Ilyce Shugall *
Stacy Tolchin
Courtney McDermed **
Stacey L. Gartland
Avantika Shastri

180 Sutter Street, Fifth Floor
San Francisco, CA 94104-4029
(415) 981 3000    Telephone
(415) 981 3003    Facsimile

Palo Alto Office
(650) 688 6020    Telephone

*Admitted in Illinois
**Admitted in Arizona

<u>VIA PERSONAL DELIVERY</u>
January 9, 2007

U.S. Department of Homeland Security
**U.S. Immigration and Customs Enforcement**
Nancy Alcantar
Field Office Director
630 Sansome Street, Room 590
San Francisco, California 94111

<u>RE</u>:    <u>SHAMS, Djafar</u>
A78 670 244
Request for Release from Custody

Dear Ms. Alcantar:

The above referenced individual is currently in the custody of the Department of Homeland Security ("DHS"). Mr. Shams has been in DHS custody since October 27 2006 when he was detained by DHS.

Pursuant to my discussion with Deportation Officer Alcala of the U.S. Immigration and Customs Enforcement, I understand that Mr. Shams will be entitled to a 90-day review of his custody on January 27, 2007. See 8 C.F.R. § 241.4(d). Based on the below, we request that she be released on that date and resume living with his wife.

The regulation provides that after the 90 day period of removal has expired, the District Director "may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to the property or a significant risk of flight pending such alien's removal from the United States." 8 C.F.R. §241.4(d)(1). This letter requests that Mr. Shams be released from custody because he is neither 1) a danger to the community or to the safety of other persons or to property, nor 2) a significant risk of flight pending his removal from the United States.

In making a determination for release, the District Director considers, for example, the detainee's disciplinary record, criminal record, rehabilitation, history of flight and favorable factors such as family ties. See 8 C.F.R. § 241.4(f). In order to authorize the detainee's release, the District Director must conclude:

SHAMS, Djafar, A78 67⌐ _44
1/9/2007
Page 2

(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or in the public interest;
(2) The detainee is presently a non-violent person;
(3) The detainee is likely to remain non-violent if released;
(4) The detainee is not likely to pose a threat to the community following release;
(5) The detainee is not likely to violate the conditions of release; and
(6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e). Applying the factors under 8 C.F.R. §241.4(f) and the above criteria as they relate to the present case, it is clear that Mr. Shams should be released. He has no criminal history and is not a flight risk.

Background

Mr. Shams is married to a United States citizen, has a United States citizen mother and his sister and her family are United States citizens, as well. Mr. Shams arrived in the United States in April 2000, as a visitor. Shortly after his arrival, Mr. Shams prevailed upon his sister to translate for him as he investigated the Christian philosophy. See Exhibit B, letter from Mahnaz Shams Depp, Mr. Shams' United States citizen sister. On October 1, 2000, Mr. Shams and his sister converted to Christianity and were baptized at First Congregational Church of Santa Cruz. He subsequently applied for asylum based on the fact that the punishment for Muslims who convert to Christianity in Iran is death. Immigration Judge Yam denied Mr. Shams' case on June 19, 2002 and his attorney, Nadia Farah, appealed his case to the Board of Immigration Appeals ("BIA"). The BIA affirmed Judge Yam's order on June 16, 2003 but Ms. Farah did not inform Mr. Shams of that. In fact, Mr. Shams did not learn that he had a final order of removal until he received the surrender order from DHS in early December 2003. At that point, Mr. Shams health was extremely delicate as a result of several heart operations and complications. Thus, Mr. Shams applied for a stay of removal which the District Director granted. He was on supervised release for the next two years. On September 22, 2006, Mr. Shams and his United States citizen girlfriend married. An immigration consultant advised them to file a "one step" petition for Mr. Shams, which they did. When his wife, Homa Soroor, filed the one-step, Mr. Shams was arrested and taken into custody. Mr. Shams has been in immigration custody for nearly 90 days.

Ms. Shams' Immediate Removal is not Practicable or in the Public Interest

The first criteria in evaluating release after the 90 day period is whether "immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. §241.4(e)(1). Mr. Shams has been found removable to Iran, however, it appears that DHS has been unable to obtain a travel document for him. When DHS granted Mr. Shams application for a stay of removal in January 2003, he was instructed to renew his passport or obtain a travel document. Mr. Shams sent his passport into the Iranian Interest Section in Washington DC but has heard nothing since that time. He did attempt to call the Interest Section on more than one occasion but was never able to get through to anyone. As such, it appears obtaining a travel document is quite difficult and immediate removal is not practicable. Furthermore, the

SHAMS, Djafar, A78 67∪ ∠44
1/9/2007
Page 3

immediate removal of Mr. Shams is not in the public interest as he has numerous family ties to the United States and fears returning to Iran as a Muslim who converted to Christianity.

Mr. Shams is married to a United States citizen whom he dated for two years before they married. See Exhibit A, Letter from Mr. Shams' United States citizen wife, Homa Soroor. His wife's letter states, "Djafar is a good and honest man. He is the best man I have ever known, which is why I married him and I will stay with him no matter what." Id. This sentiment is echoed through the many letters sent in support of Mr. Shams' request for release from custody. See Exhibits A - I, Letters from family and friends in support of Mr. Shams' release. For example, Mr. Shams' brother-in-law writes, "In the six and a half years Djafar Shams has been in the United States, he has proved himself to be an honorable and hard-working individual who displays the classic qualities America has always found most admirable in those new to its shores." Exhibit E, Letter from Dan Depp. Mr. Shams' United States citizen sister also states, "Djafar is the kindest person I know. He always goes out of his way to help people." Exhibit B, Letter from Mahnaz Shams Depp. Respondent's mother adds that Respondent "has been so much more positive and hopeful since he has learned about and converted to Christianity. He understands how to live with your religious belief without it being mixed up with politics. He has learned that he can love people regardless of their political or religious belief. Truly live and let live has become his motto." Exhibit C, Letter from Respondent's mother, Azizeh Rahaei. All evidence in this case supports a finding that Mr. Shams is not a flight risk, is a law-abiding and gentle person.

<u>Mr. Shams Has Always Been, and Continues to be, a Non-Violent Person.</u>

Mr. Shams was never deemed to be a violent person. He has no criminal history in the United States or any other country. Past convictions (or lack thereof), are to be considered as a factor under 8 C.F.R. §241.4(f)(2). In this case, as Mr. Shams has <u>no</u> criminal history whatsoever, this should be a positive factor in his case.

Furthermore, the statutory criteria for the detainee's release consider the detainee's <u>present and likely future actions</u>. See 8 C.F.R. §241.4(e) (emphasis added). All of the letters of support received on behalf of Mr. Shams indicate that he is an extremely peaceful person. See Exhibits A-I. A letter from a family friend from Iran states that Mr. Shams' conversion made him so calm and happy that she decided to investigate Christianity for herself and subsequently decided to become a Christian, as well. Exhibit F, Letter from Mahboobeh Nematolahi. She goes on to say that Mr. Shams "has been a very good man and has followed the law." Id. Mr. Shams' evidence in support of his release warrants the favorable exercise of discretion because it demonstrates that he does not pose a danger to the community or to the safety of other persons nor to property or a significant risk of flight as required under 8 C.F.R. §241.4(d)(1) for further detention.

Mr. Shams' family members and friends residing in the United States agree that he is a responsible, non-violent adult who is an asset to their community. Public opinion is overwhelmingly in favor of Mr. Shams' release and against his immediate removal from the United States. Letters have been written on Mr. Shams' behalf from his wife, his sister, his mother, his brother-in-law, his nephew, his neighbors and friends. See Exhibits A – I. Mr.

SHAMS, Djafar, A78 670 244
1/9/2007
Page 4

Shams' United States citizen wife writes, "Please, please let me know if there is anything you need form me. I will do whatever is needed. I miss my husband. I want my family to be whole again." Exhibit A, Letter from Homa Soroor. The overwhelming support on behalf of Mr. Shams is a testament to his belief that Christianity is the religion of love and peace and his non-violent personality.

### Mr. Shams Will Remain Non-violent if Released

The third criteria under 8 C.F.R. §241.4(e)(3) for release is whether Mr. Shams is "likely to remain non-violent if released." As indicated above, Mr. Shams was never deemed to be a violent person in the first instance and thus he will remain non-violent.

Mr. Shams converted to Christianity because he perceived it at the religion of love and peace. Thus, Mr. Shams is obviously committed to nonviolence and harmonious relationships. Mr. Shams' family and friends are deeply committed to him and support him. Mr. Shams is an integral part of his family and community, and as such, Mr. Shams' family and friends will obviously continue their support of him upon his release.

### Mr. Shams is not Likely to Pose a Threat to the Community Following Release

The fourth criteria for release under 8 C.F.R. §241.4(e)(4) is whether Mr. Shams is likely to pose a threat to the community following release. Mr. Shams poses no threat to the community as evidenced by his lack of any disciplinary record in detention as well as having absolutely no criminal history whatsoever.

### Mr. Shams is not Likely to Violate the Conditions of Release

The fifth criteria for release is whether Mr. Shams is likely to violate the conditions of release. Mr. Shams has been so traumatized by his detention, he do anything the government requires to avoid going through this experience again and will absolutely comply with all conditions of release as required under 8 C.F.R. § 241.4(e)(5). Mr. Shams' wife, mother and sister and sister's family are in the United States and he is looking forward to reuniting with his family and friends. Mr. Shams is desperate to return to his wife and would not jeopardize causing any additional harm to his family by violating any condition of release.

### Mr. Shams Does Not Pose a Flight Risk if Released

The final criteria for release under 8 C.F.R. §241.4(e)(6) is whether Mr. Shams poses a flight risk. Mr. Shams is determined to resume caring for her severely mentally disabled husband and her aging mother-in-law. She is also concerned with her own health and is looking for stability and a lifestyle that entails minimum stress. Mr. Shams would not abandon his wife or other family and he would not leave his wife in an attempt to avoid his removal order. His family is in California and he will remain here with them until his removal can be carried out.

### Further Considerations for Release.

SHAMS, Djafar, A78 67\_ \_44
1/9/2007
Page 5

Mr. Shams has no prior convictions. He simply wishes to reunite with his wife and his other family members and his church and neighbors. He is a peaceful person who shares his understanding of love and truth with people around him. His nephew states that he learned from Mr. Shams,

> how important it is to have the freedom of choosing what you believe. How important it is that we have separation of the church and the state. When my uncle came here he was scared to talk about his desires to learn about Christianity. He saw how easily the Christians of the First Congregational Church accepted him. They taught him about kindness and accepting. Now, he talks about it openly to whomever is willing to listen to him.

Exhibit D, letter from Mr. Shams' nephew, Jacob Depp.

Letter after letter talks about the happiness and peace and tranquility that Respondent has come to know through his new religion and that his example and witness to people has changed their lives. See e.g. Exhibit B, Letter from Mahnaz Shams Depp, "While I would translate for Djafar [during church and his meetings with the pastor], I became fascinated with whole way of living following Jesus' way. On October 1, 2000 Djafar and I both were baptized. I am delighted to have found my way in following God's Son." Likewise, a family friend, Mahbooeh Nematolahi, stated that after Mr. Shams had converted to Christianity, he was so calm and happy that she "decided to go to the Iranian Christian Church, in Sunnyvale. [She] was so amazed by their teachings and the way of Jesus that [she] decided to convert to Christianity. [She has] been so happy since." Exhibit F, Letter from Mahbooeh Nematolahi. Mr. Shams' former neighbor, also writes that he and Mr. Shams used to go to the Bay Area Persian Church in Santa Clara. Exhibit I, Letter from Babak Zarekani. Thus, it is clear that Mr. Shams only interest in the United States is being a Christian and being close to his wife and family. His nature is one of peace and honesty. He will not be violent, nor disobedient to any of the conditions set by DHS in reference to his release.

For the above stated reasons, Mr. Shams should be released on a reasonable bond. An expedited decision is warranted so that Mr. Shams is not incarcerated longer than necessary and so that DHS will not bear the burden of further unnecessary detention expenses.

Thank you for your prompt attention to this matter. Should you require further information or documentation to grant this request for release, please contact me at: (415) 981-3000.

Sincerely,

Courtney McDermed

Enclosures
cc:     Mr. Djafar Shams
        Ms. Homa Soroor

<u>EXHIBITS IN SUPPORT OF REQUEST FOR RELEASE FROM CUSTODY</u>

Djafar SHAMS
A78 670 244

A.    Letter from Homa Soroor, Mr. Shams' United States citizen wife, dated January 1, 2007, with a copy of her certificate of naturalization and a copy of their marriage certificate;

B.    Letter from Mahnaz Shams Depp, Mr. Shams' United States citizen sister, dated January 2, 2007;

C.    Letter from Azizeh Rahaei, Mr. Shams' United States citizen mother with certificate of translation, dated January 3, 3007;

D.    Letter from Jacop S C Depp, Mr. Shams' United States citizen nephew, dated January 2, 2007;

E.    Letter from Dan Depp, Mr. Shams' United States brother-in-law, dated January 6, 2007;

F.    Letter from Mahboobeh Nematolahi, a family friend, with certified translation, dated January 5, 2007;

G.    Letter from Lori Adragna, friend of Respondent, dated January 6, 2007;

H.    Copy of Certificate of Baptism for Mr. Shams; dated October 1, 2000.

I.    Letter from Babak Zarekani, Mr. Shams' former neighbor, dated January 2, 2007;

J.    Letter from Philip Nikzat, Pastor's Assistant at Bay Area Persian Church in Santa Clara, dated May 22, 2001;

*Homa Soroor*
*5951 Sunmist Dr*
*Yorba Linda CA   92886*
*714.296.0232*

*Jan 1, 2007*

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

     RE:   Djafar SHAMS
           A 78-670-244

To Whom it May Concern,

My name is Homa Soroor, and I have been the wife of Djafar Shams since 22 September 2006. I would like to write a few words to you about Djafar, because I believe he is a wonderful man who has brought great joy to my life. I feel I need to say these words to you because you do not know him as I do. I will try to explain to you how I feel.

We started dating in January 2004.  From the very beginning his kindness and caring personality got my attention.  We dated for about a year and eight months before we decided to get married.

I am 54 years old and Djafar is 56. It is difficult for me to explain to you how it feels at this age to find someone to be so in love with. Djafar is such a generous and gentle man, and so full of humor, that I fell in love with him immediately. I knew from the beginning that I wanted to share my life with him. I was so happy to find that he returned my love.

We were dating about seven months when I decided to buy an apartment in Mountain View that has been Djafar's residence. I knew Djafar needed to be in Central California in order to report to the INS office every month. I was not able to move to Mountain View myself because my life is established in Orange County. I own a business employing fourteen people and have many responsibilities.  I own my residence in Yorba Linda and take care of my mother, who lives with me.

EXHIBIT A

I would have preferred that Djafar and I be nearer to each other, but Djafar is very strict about obeying the rules and was not willing to move nearer to me. I have had to travel to Mountain View in order to see him but this is a very small sacrifice to be with someone you love.

The past ten weeks that Djafar has been in custody have been horrible for both Djafar and for me. It is easier for me because I still have my family and friends around me. Djafar is alone and frightened, and it is worse for him since he is a man who lives for his friends and his family. I think being unable to see the faces of those he loves is worse for him than the confinement itself.

Djafar is a good and honest man. He is the best man I have ever known, which is why I married him and I will stay with him no matter what. If you speak to anyone who knows him, they will tell you about his big heart and the happiness he creates in people around him. This is why it is so difficult to understand why someone like Djafar should have so much suffering, especially in a country that he has come to love so much. If you knew him as I know him, and as his friends know him, you would understand.

Please, please let me know if there is anything you need from me. I will do whatever is needed. I miss my husband. I want my family to be whole again.

Respectfully,

Homa Soroor



No. 2 228 663

Personal description of holder
as of date of naturalization:

Date of birth: JANUARY 9, 1951

Sex: FEMALE

Height: 5 feet 6 inches

Marital status: DIVORCED

Country of former nationality:

IRAN



IT IS PUNISHABLE BY U S LAW TO COPY,
PRINT OR PHOTOGRAPH THIS CERTIFICATE,
WITHOUT LAWFUL AUTHORITY.

FORM N 550 REV 6 91

I certify that the description given is true, and that the photograph affixed
hereto is a likeness of me.

_(Complete and true signature of holder)_

Be it known that, pursuant to an application filed with the Attorney General

at: LOS ANGELES, CA

The Attorney General having found that:

HOMA SOROOR

then residing in the United States, intends to reside in the United States, when so
required by the Naturalization Laws of the United States, and had in all other
respects complied with the applicable provisions of such naturalization laws and was
entitled to be admitted to citizenship, such person having taken the oath of allegiance
in a ceremony conducted by the

U.S. DISTRICT COURT
FOR THE CENTRAL DIST. OF CALIFORNIA

at: LOS ANGELES, CA

on: OCTOBER 1, 1998

that such person is admitted as a citizen of the United States of America.

_Commissioner of Immigration and Naturalization_

INS Registration No. A 22 405 445

State of Nevada

# Marriage Certificate

State of Nevada } ss.
County of Washoe }

This is to certify that the undersigned, _____ Minister _____ (Title)

did on the 23rd day of September , 20 06

at ARCH OF RENO WEDDING CHAPEL, RENO

(Address of Church) (City) Nevada,

join in lawful wedlock _____ DJAFAR SHAMS _____

of MOUNTAIN VIEW (City) State/Country of CALIFORNIA

and _____ HOMA SOROOR _____

of YORBA LINDA (City) State/Country of CALIFORNIA

Mailing Address 5951 SUNMIST DR YORBA LINDA CA 92886

with their mutual consent, in the presence of

_____ and _____ , witnesses.

_Jack Cobb_

Signature of person performing marriage

_Jack Cobb_, Minister

Print name under signature.

Minister

Title/title of person performing the marriage

_Amy Harvey_

COUNTY CLERK

*Mahnaz Shams Depp*
*4866 Clydelle Av*
*San Jose CA 95124*
*408.371.7756*

*Jan 2, 2007*

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

RE:    Djafar SHAMS
A 78-670-244

To Whom it May Concern,

I am a librarian at the University of California, Santa Cruz. Djafar is my brother and he has been like a father to me since we lost our father when I was four. He went to work at the age of 16 in order to help with expenses for my mother and me.

When Djafar came to visit me in the United States, he was interested in knowing about Christianity. He asked me questions about it and I knew very little even though I had been living in this country for 23 years. He asked me if we could go to visit a church. We were living in Santa Cruz at the time. There were no Persian speaking churches there. So, I took him to the First Congregational Church on High Street in Santa Cruz. This church was recommended by my friend. We started to visit on the weekly basis. I had to translate to him what it was being said. After a few weeks, he asked if we could talk to the pastor, Al Williams for some private talks. I talked to Mr. Williams and he agreed on seeing us once a week. We would discuss the philosophy of Christianity and the differences with Islam. While I would translate for Djafar, I became fascinated with whole way of living following Jesus' way. On October 1, 2000 Djafar and I both were baptized. I am delighted to have found my way in following God's Son.

Djafar is the kindest person I know. He always goes out of his way to help people. He has graciously always helped me with whatever I asked him. Whether it was my car needed to be taken to the mechanics or things needed to fixed around the house or taken our mother to the doctors, he has been there for me.

Djafar follows the rules and I often accompanied him to San Francisco for his monthly report to the INS office. He never missed a single visit.

EXHIBIT 

Please call me if you need me to answer any questions or clarify any point.

Respectfully,

Mahnaz Shams Depp

**Azizeh Rahaei**
**4866 Clydelle Av**
**San Jose, CA 95124**
**408.371.7756**

January 3, 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

            RE:    Djafar SHAMS
                   A 78-670-244

To Whom It May Concern,

My name is Azizeh Rahaei and Djafar is my son.  I lost my husband when my children were very young. Djafar was 12 years old. I had four children from 4 to 13 years old. I could not work at that time given the role of women in Iran. I raised my children with what was left from my husband. As first son turned 18, he was drafted to the army. Djafar went to work to help us maintain. He took care of me and his sister till she was 20 years old and came to the States.  He continued to take care of me till 1990 when I came to stay with his sister. He has always been caring and a devoted son. Since he has come to the States, he has worked hard to support himself and help his three children back home, in Iran. All he wanted was to live freely with what he believes and help his children to have freedom to grow up without fear and pursue their dreams.

He has been so much more positive and hopeful since he has learned about and converted to Christianity. He understands how to live with your religious belief without it being mixed up with politics. He has learned that he can love people regardless of their political or religious belief.  Truly live and let live has become his motto.

This period has been so difficult for me to watch my child suffer. As a mother I feel so helpless.

Please let me know if there is anything I can do.

                            Sincerely,

                            ظ،ز,ح ۶

                            Azizeh Rahaei

EXHIBIT C

## <u>CERTIFICATION BY TRANSLATOR</u>

I, Mahnaz Shams Depp, hereby certify that I am fluent in the English and Farsi
languages, and that that the attached document as it was told to me by Azizeh Rahaei, in
the Farsi language and that she agreed that the contents are true and accurate.

Date:    Jan 3, 2007                           Translator:    Mahnaz Shams Depp

Address            4866 Clydelle Av
San Jose, CA 95124

*Jacob S C Depp*
*4866 Clydelle Av*
*San Jose CA 95124*
*408.371.7756*

January 2, 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

    RE:  Djafar SHAMS
       A 78-670-244

To Whom It May Concern,

My name is Jacob Depp and Djafar is my uncle. I was 11 years old when my uncle came to the States. He stayed with us a short while. He has taught me to appreciate living in the United States. I have learned how important it is to have the freedom of choosing what you believe. How important it is that we have separation of the church and the state. When my uncle came here he was scared to talk about his desires to learn about Christianity. He saw how easily the Christians of the First Congregational Church accepted him. They taught him about kindness and accepting. Now, he talks about it openly to whomever is willing to listen to him.

I have a much better understanding of our democracy and social freedom. My uncle has told me stories about how hard it is to grow up under a government who will dictate how one should dress, what to believe in and even who to choose as a friend. I learned that children in Iran cannot be friends with other children with different beliefs. How lucky I am that I live here.

Please call me if I can clarify anything.

          Sincerely,

          Jacob Depp

EXHIBIT D

Dan Depp
4866 Clydelle Ave
San Jose CA 95124
408.371.7756

6 January 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

RE:    Djafar SHAMS
       A 78-670-244

To Whom It May Concern:

In the six and a half years Djafar Shams has been in the United States, he has proved himself to be an honorable and hard-working individual who displays the classic qualities America has always found most admirable in those new to its shores.

When Djafar first arrived in the USA, I confess I had certain misgivings, even though he intended to stay only a short time. Not misgivings toward his character – which has always been of the highest rank – but worries about the difficulties he would face in a new country.

As blessed as she is, America can often be a tough place – even for those of us who were born here. But with Djafar it was love at first sight. The difficulties were clearly outweighed by the chance at freedoms and opportunities he'd never encountered before.

I am however delighted and proud of the way Djafar has met the many problems he has encountered. He quickly set about learning the language. He barely spoke a word of English, but through sheer determination and hard study taught himself the language in a very short time.

I am also impressed at his willingness to work long and hard to support himself and send money to family "back home". He has shown himself to be a diligent and honest employee, and it is a great joy to see what he has accomplished.

Not only has Djafar shown that he is a hard worker and an honest man, but he has displayed great bravery in his commitment to becoming a Christian. It has been difficult and painful choice to leave the religion of his birth and culture, and one has to marvel at the courage is has taken for him to follow his heart and soul and embrace Jesus Christ.

Djafar's desire for the Christian way of life is courageous not only because of his considerable emotional sacrifice, but because it involves a great physical danger as well. His openness at

EXHIBIT E

becoming a Christian has placed him at odds with the government of Iran, who take such decisions as a betrayal of the government itself. They deal harshly with those who have renounced Islam.

In making these difficult decisions, Djafar has made it clear how utterly serious he is at becoming an American and Christian. Those of us who were born here, into this religion and this culture, easily take it for granted.

As a result, watching Djafar's progress has been an enlightening experience for me. As a nation of immigrants, Djafar's struggle to become an American and a Christian clearly illustrates what this country is all about.

Respectfully,

Dan Depp

**Mahboobeh Nematolahi**
**2407 Lascar Pl**
**San Jose CA 95124**
**408-879-9562**

Jan 5, 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

     RE:   Djafar SHAMS
          A 78-670-244

To Whom it May Concern,

    My Name is Mahbbobeh Nematolahi. I know Djafar and his family for over half a century. I came to the United States close to twenty years ago.

    I spoke with Djafar when he came to the States and he was asking about Christianity. He explained how the religion and the government were mixed up. One had no idea which is which. They could question you or even keep you in prison for political reason using religion to justify it. He was very upset and angry about it all.

    I met him a few months later and he told me he had converted to Christianity. He was much calmer and happier. I decided to go to the Iranian Christian Church, in Sunnyvale. I was so amazed by their teachings and the way of Jesus that I decided to convert to Christianity. I have been so happy since then.

    As far as I know Djafar, he has been a very good man and has followed the law.

    Please feel free to contact me if I can answer any questions.

          Sincerely,

          Mahbooeh Nematolahi

EXHIBIT

## <u>CERTIFICATION BY TRANSLATOR</u>

I, Mahnaz Shams Depp, hereby certify that I am fluent in the English and Farsi languages, and that that the attached document as it was told to me by Mahboobeh Namatolahi, in the Farsi language and that she agreed that the contents are true and accurate.

Date: ___Jan 5, 2007_____

Translator: ___Mahnaz Shams Depp___

Address     4866 Clydelle Av
San Jose, CA 95124

Lori Adragna
100 Naramore Lane
Los Gatos, Ca. 95032
(408) 871-2700

Jan 6, 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

RE:    Djafar SHAMS
       A 78-670-244

To Whom It May Concern,

My name is Lori Adragna. I've known Djafar since 2001 as we became neighbors. I have witnessed Djafar over the years as a hard working man eager to improve his skills. He asked me to help him with his English and displayed his interest to learn more every day. I am really amazed at what he has accomplished since he has been here.

I was sorry to see that he moved away from my neighborhood however, we still remain friends. We have welcomed Djafar into our home and have shared many meals together with our friends. I was proud to be a witness at his wedding to Homa on 22nd of September 2006. Since he and Homa became a couple about two years ago, Djafar has become a different man full of love and care. I have witnessed a real change for the better because of Homa. She has proved to be the shining star in his life.

As far as I can tell, Djafar has been a law abiding member of this community. He has also helped many friends and neighbors when in need, showing he truly cares.

Please feel free to contact me if I can be of any assistance.

Sincerely,

*Lori Adragna*
Lori Adragna

EXHIBIT G

# Certificate of Baptism

*"For we were all baptized by one Spirit into one body...."*  *1 Corinthians 12:13*

This certifies that

## Djafar Shams

received Christian Baptism

on the 1st day of October

in the year of our Lord 2000

First Congregational Church
Santa Cruz, California

*Alfred E. Williams*

Rev. Alfred Williams

EXHIBIT H

**Babak Zarekani**
**1331 S. Wolfe Rd, #22**
**Sunnyvale, CA 94087**
408-306-5418

Jan 2, 2007

Nancy Alcantar
Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, California 94111

RE:    Djafar SHAMS
A 78-670-244

To Whom it May Concern,

I am Babak Zarekani. I've known Djafar since 2001 as we became neighbors. I have witnessed Djafar over the years to work hard and learned to improve his skills. He asked me to teach him about computers and help him with his English. I am really amazed at what he has accomplished. He and I used to go to the Bay Area Persian Church in Santa Clara.

He moved away from my neighborhood but we remained friends. I was also impressed at his willingness to work long and hard to support himself and send money to his children back home. He has shown himself to be a diligent and honest employee.

Please feel free to contact me if I can be of any assistance.

Sincerely,

*B Zarekani*

Babak Zarekani

EXHIBIT I



*Bay Area Persian Church in Santa Clara*

3137 Forbes Ave., Santa Clara, CA 95051

*05/22/01*

To whom it may concern:

Mr. Djafar Shams has been attending weekly church services and Bible studies at Bay Area Persian Church in Santa Clara for the past several weeks. If you have any further questions or concerns, please feel free to contact Pastor Tony Emamghoraishi at (408) 422-4229.

Regards,

Philip Nikzat

Pastor's Assistant

EXHIBIT J

EXHIBIT N



*EMBASSY OF PAKISTAN*
**INTERESTS SECTION OF THE ISLAMIC REPUBLIC OF IRAN**
2209 WISCONSIN AVENUE N.W. WASHINGTON, D.C. 20007
TEL: (202) 965-4990 FAX: (202) 965-1073 www.daftar.org

January 31, 2007

*Office of Detention and Removal Operation*
**U.S. Department of Homeland Security**
Bureau of Immigration & Custom Enforcement
630 Sansome St. 5th Floor
San Francisco CA 941111

RE: Djafar Shams   A#78 670 244

**Dear Officer:**
 In accordance with regulations governing the issuance of an Iranian travel document, submission of the original Iranian birth certificate is necessary. We would not be able to issue a travel document for anyone without an Iranian birth certificate.
 Should you have any questions, please contact us.

Sincerely

for   R. A. Moshy

Mostafa Rahmani

EXHIBIT O

U.S. Department of Homeland Security
San Francisco District Office
630 Sansome St.
San Francisco, CA 94111



**U.S. Immigration
and Customs
Enforcement**

SHAMS, Djafar                                                    A78 670 244
In Agency custody

## Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined
that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE)
at this time. This decision has been made based on a review of your file and/or your personal
interview and consideration of any information you submitted to ICE's reviewing officials.

    *(1) The Agency is actively pursuing a travel document for your Removal;*

    *(2) On 01/26/07 you were interviewed by the Pakistan Embassy, Interests Section,
    Islamic Republic of Iran;*

Based on the above, you are to remain in ICE custody pending your removal from the United States.
You are advised that you must demonstrate that you are making reasonable efforts to comply with
the order of removal, and that you are cooperating with ICE's efforts to remove you by taking
whatever actions ICE requests to effect your removal. You are also advised that any willful failure
or refusal on your part to make timely application in good faith for travel or other documents
necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the
issuance of a travel document, may subject you to criminal prosecution under 8 USC Section
1253(a).

If you have not been released or removed from the United States by **April 22, 2007** jurisdiction of
the custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU),
801 I St. NW, Washington, DC 20536. HQPDU will make a final determination regarding your
custody.

_____                          2/2/07
Signature and Title of Deciding Official                  Date

# INSTRUCTION SHEET TO DETAINEE REGARDING REQUIREMENT TO ASSIST IN REMOVAL

The following is a list of things you are required to complete within 30 days of receiving this form, in order comply with your obligation to assist in obtaining a travel document:

*Mandatory requirements will be checked off by the INS officer depending on the facts of each case. Failure to comply or provide sufficient evidence of your inability to comply, may result in the extension of the removal period and subject you to further detention. In addition, you may be subject to criminal prosecution. If you need assistance in complying with any of the requirements, please contact a Deportation Officer.*

x    Submit passports (current and expired) ~~Signed~~ of your passport, you are to submit it.

x    Apply for a travel document/passport fr~~Feb. 4, 2007~~, or directly from your government in your native country, or a~~~~ of your native country in another country.

x    Comply with all instructions from all er~~~~ ~~~~ng completion of documentation for issuance of a travel document.

x    Submit to the INS birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.

x    Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document.

x    Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.

x    You are required to take measures to request reinstatement of your previous nationality, register as required, or take any other action that will ensure the issuance of a travel document and your removal from the United States.

x    Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.

x    Provide INS with written copies of responses from embassies or consulates regarding your requests.

☐    Solicit permission from another country, which may be able to accept you, to enter that country to effect your removal from the United States.

X    Other:_You need to disclose to the agency the location of your original Iranian birth certificate and passport. If you claim your passport was sent to the Pakistain Embassy Interest Section Isalamic Republic of Iran, you must provide the Agency with evidence and circumstances of such claim._

Alien's Signature _____    A Number **A78 670 244**

Served by_Jerald H. Walters_____ on _____ at San Francisco, CA .

            Officer's Name                         Date                 Location

To be served with I-229 (a) no later than 30 days after the final order

(Rev. 10/24/02)

**U.S. Department of Homeland Security**
Immigration & Customs Enforcement                        **Warning for Failure to Depart**

| Name: SHAMS, Djafar | District Office: San Francisco, CA | File #: A78 670 244 |
|---|---|---|

Section 243(a) of the Immigration and Nationality Act of 1952, as amended, provides, in part, that:

Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who—

(A) willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court.

(B) willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,

(C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or

(D) willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action the Immigration and Naturalization Service may take to obtain a travel document for your departure or to remove you will *NOT* relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

*Section 241(a)(1)(C) provides for the extension of that period of time if the alien refuses, during the detention period, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal subject to an order of removal.

| Date Order Final: 6/16/03 | Ordered Removed under Section: 237 ~ 1 B |
|---|---|

| Record of Service (Check method used) Record of Personal Service | |
|---|---|
| Served By: (Print Name and Title of Officer) Jerald H. Walters | Date: 2/2/07 |
| Officer's Signature: | Location of Service: SFR |
| Served On: (Alien's Signature) | Date: 2/2/07 |

| Warning administered in Court (Copy of order attached) | Record of Personal Service (Cont) |
|---|---|
| Certified Mail Service | Fingerprint of Alien (Specify finger used) |
| Attach certified mail receipts here. | |

Form I-229(a)
(Revised.08/20/01)

EXHIBIT P

# Van Der Hout, Brigagliano & Nightingale, LLP

Marc Van Der Hout
Christine Brigagliano
Zachary Nightingale
Ilyce Shugall *
Stacy Tolchin
Courtney McDermed **
Stacey L. Gartland
Avantika Shastri

180 Sutter Street, Fifth Floor
San Francisco, CA 94104-4029
(415) 981 3000     Telephone
(415) 981 3003     Facsimile

Palo Alto Office
(650) 688 6020     Telephone

*Admitted in Illinois
**Admitted in Arizona

<u>**VIA PERSONAL DELIVERY**</u>
February 2, 2007

U.S. Department of Homeland Security
**U.S. Immigration and Customs Enforcement**
Nancy Alcantar
Field Office Director
630 Sansome Street, Room 590
San Francisco, California 94111
FAX (415) 844-5514

    <u>RE:</u>   <u>SHAMS, Djafar</u>
          A78 670 244
          Renewed Request for Release from Custody

Dear Ms. Alcantar:

    The above referenced individual is currently in the custody of the Department of Homeland Security ("DHS"). Mr. Shams has been in DHS custody since October 27 2006 when he was detained by DHS. On January 9, 2007, Mr. Shams submitted a request for a 90-day review of his custody pursuant to 8 C.F.R. § 241.4(d). As of today, Mr. Shams has been in custody for 98 days.

    The regulation provides that after the 90 day period of removal has expired, the District Director "may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to the property or a significant risk of flight pending such alien's removal from the United States." 8 C.F.R. §241.4(d)(1). As it has been amply documented in the release request submitted on January 9, 2007, Mr. Shams should be released from custody because he is neither 1) a danger to the community or to the safety of other persons or to property, nor 2) a significant risk of flight pending his removal from the United States.

    As you are no doubt aware, Mr. Shams has no criminal history in this country and, thus, there is no suggestion that he is in any way a danger to the community or to the safety of people or property. He has deep family ties in the United States. His United States citizen wife, mother, sister, brother-in-law and nephew have all written letters of support in addition to other friends in this country.

    As a result of Mr. Shams' incarceration, his wife, sister and mother have all experienced serious health problems. His sister has had such "continued stress and anxiety about her brother

[which] exacerbate[es] her distress, depression and anxiety. Her distress was of sufficient intensity to require a medical leave of absence from her work as a Librarian at the University of California Santa Cruz." See attached letter from Gregory Kraft, Ed.D, Licensed Psychologist who has been treating Mrs. Depp since January 10, 2007. Furthermore, Mr. Shams mother, Azizeh Rahaei, has experienced "a great deal of stress [as a result of her son's detention] which is causing adverse problems for her health." See attached letter from Hossein Shenasa M.S., M.Sc., F.A.C.C., Ms. Rahaei's treating cardiologist for the past three years. Mr. Shams' wife, Homa Soroor, has also developed a stress related rash as a result of her husband's prolonged detention.

Additionally, Mr. Shams, himself, has a very serious heart condition. In fact, he was initially granted a stay by the government in 2004 because of the precarious state of his heart. He continues to be on heart medication and his health is suffering greatly in detention. He told his sister that the health providers at Santa Clara County jail changed his heart medication on Wednesday, January 31, 2007, and it was causing him enormous discomfort. Because his health is so delicate, it would potentially be an enormous liability for the government if he were to have another cardiac episode while in custody.

Moreover, Mr. Shams is not a flight risk because he reported faithfully to DHS while he was on supervised release. He has now lived in the United States for nearly seven years and has lengthy and strong times to the community.

Additionally, Mr. Shams has filed a motion to reopen at the Board of Immigration Appeals with a request for a stay (of copy of which was sent to Mr. Shams' Deportation Officer). Thus, potentially the Board could grant his motion to reopen and he would have a legal avenue to continue pursing lawful status in the United States. This is yet another reason why Mr. Shams has every reason to cooperate with the government's conditions when they release him. Finally, Mr. Shams has offered to pay a bond as a good faith demonstration that he is not a flight risk.

For the above stated reasons, Mr. Shams should be released on a reasonable bond. An expedited decision is warranted so that Mr. Shams is not incarcerated longer than necessary and so that DHS will not bear the burden of further unnecessary detention expenses. His removal is not reasonably foreseeable as it appears no travel document is available from Iran.

Thank you for your prompt attention to this matter. Should you require further information or documentation to grant this request for release, please contact me at: (415) 981-3000.

Sincerely,

Courtney McDermed

Enclosures
cc:    Mr. Djafar Shams, Ms. Homa Soroor

# Heart&Rhythm *Medical Group*

### Cardiology & Electrophysiology • Pacemaker & Defibrillator Clinic

Hossein Shenasa M.D., M.Sc., F.A.C.C.                                    Mohammad Shenasa M.D., F.A.C.C.

February 1, 2007

RE: Rahaei, Azizeh

To Whom It May Concern:

Mrs. Rahaei has been under my care for multiple cardiac problems for more than 3 years. The situation involving her son's immigration status and subsequent incarceration has caused a great deal of stress which is causing adverse problems for her health.

If you have any questions please feel free to contact me at my office, 408-358-1791.

Sincerely,

Hossein Shenasa M.D., M.Sc., F.A.C.C.

HS/mk

**Gregory Kraft, Ed.D.**
**Licensed Psychologist**
PSY 7492

409 Alberto Way, Suite #5                                            104 S. Park Way
Los Gatos, CA 95032                                                  Santa Cruz, CA 95062
408-358-3122                                                         831-462-0961

PO Box 1161
Capitola, CA 95010

February 1, 2007

To Whom It May Concern:

    Mahnaz Nazee Depp has been under my care since January 10, 2007. Due to her anxiety and distress over her brother's incarceration, she experienced a panic attack on December 29, 2006 requiring a visit to the emergency room at Good Samaritan Hospital. The continued stress and anxiety about her brother exacerbates her distress, depression and anxiety. Her distress was of sufficient intensity to require a medical leave of absence from her work as a Librarian at the University of California Santa Cruz.

    Thank you for your consideration.

Sincerely,

Gregory Kraft, Ed.D.
Licensed Psychologist

EXHIBIT Q

# Van Der Hout, Brigagliano & Nightingale, LLP

Marc Van Der Hout
Christine Brigagliano
Zachary Nightingale
Ilyce Shugall *
Stacy Tolchin
Courtney McDermed **
Stacey L. Gartland
Avantika Shastri

*Admitted in Illinois
**Admitted in Arizona

180 Sutter Street, Fifth Floor
San Francisco, CA 94104-4029
(415) 981 3000   Telephone
(415) 981 3003   Facsimile

Palo Alto Office
(650) 688 6020   Telephone

## VIA PERSONAL DELIVERY
February 9, 2007

U.S. Department of Homeland Security
**U.S. Immigration and Customs Enforcement**
Nancy Alcantar
Field Office Director
630 Sansome Street, Room 590
San Francisco, California 94111
FAX (415) 844-5514

      RE:     <u>SHAMS, Djafar</u>
              A78 670 244
              Renewed Request for Release from Custody

Dear Ms. Alcantar:

     The above referenced individual is currently in the custody of the Department of Homeland Security ("DHS"). Mr. Shams has been in DHS custody since October 27 2006 when he was detained by DHS. On January 9, 2007, Mr. Shams submitted a request for a 90-day review of his custody pursuant to 8 C.F.R. § 241.4(d). His request was denied because the government was not convinced that he was doing everything possible to secure a travel document. As of today, Mr. Shams has been in custody for 105 days.

     The regulation provides that after the 90 day period of removal has expired, the District Director "may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to the property or a significant risk of flight pending such alien's removal from the United States." 8 C.F.R. §241.4(d)(1). As it has been amply documented in the release request submitted on January 9, 2007, Mr. Shams should be released from custody because he is neither 1) a danger to the community or to the safety of other persons or to property, nor 2) a significant risk of flight pending his removal from the United States. Mr. Shams is making every effort to secure the original birth certificate as requested by the government. Mr. Shams continues to be certain that he mailed his original passport to the Iranian Interest Section.

     I sent a Freedom of Information Act request ("FOIA") on November 3, 2006 to Lee's Summit, Missouri. I recently received and complied with a check request for copying. I am hopeful that my office will receive a copy of the file shortly and we will find some proof that Mr. Shams did send a copy of his passport to the Iranian Interest Section as he has maintained for the

SHAMS, Djafar, A78 670.
2/9/2007
Page 2

past three years.  Mr. Shams' wife and sister have searched everywhere they could think of in their respective residences, attempting to find proof that the passport was sent to the Interest Section.  See attached declarations from Mahnaz "Nazee" Shams Depp and Homa Sooror. However, Mr. Shams was not in the habit of keeping documents until his girlfriend at the time, now, his wife, insisted he keep and begin filing the papers he received.  See Declaration of Homa Sooror, ¶ 2.

Mr. Shams is making every effort to obtain his birth certificate.  See attached declarations from Mahnaz "Nazee" Shams Depp and Homa Sooror.  He tells me that he left his original birth certificate in Iran with his daughters.  He requested them to mail a copy of his birth certificate in 2000 when he applied for asylum.  He has been calling his daughters from jail, using calling cards, but has not had any success in locating his birth certificate as his daughters have moved several times since he came to the United States.  See attached declarations from Mahnaz "Nazee" Shams Depp and Homa Sooror.  He has also asked his sister to help him obtain an original birth certificate.

His sister, Nazee, states that she has called the Iranian Interest Section asking for help in obtaining a birth certificate for her brother because in her experience, nothing short of a personal appearance at the issuing office in Iran is sufficient to obtain a birth certificate.  See Declaration of Mahnaz "Nazee" Shams Depp, ¶ 11.  Nazee was been told that the Interest Section has 'nothing to do with that' and they cannot help her brother. Id., ¶ 13.  Thus, Mr. Shams and his family are doing everything possible to try to get the original documents requested by the government.

In addition to the fact that Mr. Shams is attempting to comply with government's request for his birth certificate, he should also be released because he has very serious heart condition. As you know, he was granted a stay of removal in 2004 because he had recently had two heart surgeries.  On January 31, 2007, Santa Clara County jail changed his medication for no apparent reason.  The change in medication caused him enormous discomfort and his family is extremely concerned.  The government was put on notice of this problem on February 1, 2007.  If Mr. Shams is released he can go back to getting his own personal medical care.  It seems that keeping him in custody is simply exacerbating his poor condition.

At the same time, there appears to be no dispute that Mr. Shams is neither a danger to the community or a flight risk as he has no criminal history in this country and has always reported regularly as required when he was granted the prior stay.  This is outlined more completely in the release request submitted on January 9, 2007.

Therefore, Mr. Shams should be released before another 90 days have passed based on the compelling humanitarian factors as well as the clear conclusion that Mr. Shams is neither a flight risk, nor a danger.  The government initially denied Mr. Shams request for release because it was not satisfied that he is doing making his best effort to obtain travel documents.  Mr. Shams had previously mailed his original passport to the Iranian Interest Section.  Since being notified last week that the government would like a copy of his original birth certificate, he has been working diligently to locate and provide his original birth certificate to the government as well. See attached declarations.  His removal is not reasonably foreseeable as it appears no travel document is available from Iran despite Mr. Shams' best effort to obtain one.  There is no

SHAMS, Djafar, A78 670
2/9/2007
Page 3

compelling governmental interest in keeping Mr. Shams detained as his release is not immediately foreseeable, he is not a danger or a flight risk and his health is failing as a result of his continued custody.

Mr. Shams is willing to pay whatever bond the government requests. He is also willing to submit to whatever conditions the government assigns him, so he may be released while he continues to attempt to obtain his birth certificate.

Thank you for your prompt attention to this matter. Should you require further information or documentation to grant this request for release, please contact me at: (415) 981-3000.

Sincerely,

Courtney McDermed

Enclosures
cc:    Mr. Djafar Shams, Ms. Homa Soroor

I, Mahnaz Shams Depp do hereby declare the following to be a true and correct statement to the best of my recollection:

1. I am the sister of Djafar Shams. I was born in Iran and am a naturalized United States citizen.

2. In December 2003, after my brother found out that there was a final order of deportation in his case, I asked his attorney, Nadia Farah, to file a "Stay of Deportation" form. She sent it via Federal Express to the government that day.

3. In the first week of January 2004, Officer Robinson from INS had told Ms. Farah to bring a letter with terms that they had agreed on for my brother not being taken into custody and not deported at that time. My brother was going to get "Supervised Release." In exchange for not being deported, Djafar was supposed to try to get his passport and continue receiving medical treatment.

4. To the best of my recollection, Djafar and I mailed the passport to the Interest Section of Iran. What I cannot remember is whether we sent it via Federal Express or registered mail. I do know that we did not just put the passport in the mail. I have gone to Federal Express to see if there would be some way to track the passport now and they told me they only keep records for 18 months.

5. I am sure that Officer Robinson would not have just taken our words that we had mailed the passport. We must have shown the receipt to him and most likely he made a copy of it for his file. Unfortunately, I cannot remember exact details of the situation because it was over two years ago and that time was so hectic and scary that the details of exactly how we mailed the passport are no longer very clear in my mind.

6. I have searched my house for proof of how we mailed the passport and I have not found anything relating to the passport or the Iranian Interest Section.

7. Djafar's wife, Homa, and I went to his apartment in Mountain View and searched the apartment very thoroughly as well. We could not find any shred of paper that related to the passport or the Interest Section of Iran either.

8. Because we never really understood what the procedures meant or why we were doing things, it's very difficult to remember exactly what happened. It was so hazy to me, my understanding of why we were doing certain things. I had no clear concept of the procedures or what anything meant. For example, it made no sense to me that Djafar would be granted Supervised Release and yet be asked to renew his passport. However, we were happy to do what Officer Robinson requested we do in order to keep my brother here.

9. Now that we have hired a new attorney who has explained to me and my brother what happened in the past and why it happened, everything makes a lot more sense. Unfortunately, I still cannot remember exactly how we mailed the passport to the Iranian Interest Section. However, I have spent a lot of time since Djafar's release request was denied talking to him about how we mailed the passport to the Interest Section and he says he remembers sending it registered mail through the post office.

10. It is also my understanding that the release request was denied because there was photocopy Djafar's birth certificate in the file but not the original. We have tried to get the original birth certificate since then. Djafar says he purchased phone cards in jail and called Iran, to speak to his daughters who sent him the photocopy of the birth certificate in order to apply for asylum initially. He says he's called and talked to them three times. (Each phone card costs $20 and allows him to call Iran for 6 minutes.) He says he has called his daughters who say that they have searched the house and they cannot find the birth certificate. I know his daughters have moved several times, since Djafar came to the United States. I think they have moved on a yearly basis because the cost of rent keeps going up, forcing them to move.

11. I know from personal experience that the only way an original birth certificate in Iran is by going to the original issuing office in the city where you were born. They will not issue a birth certificate to anybody else.

12. After we found out that Djafar needed an original birth certificate, even though my experience was that you needed to appear in person to request the birth certificate, I called several friends in Iran, asking them to try to get Djafar's birth certificate from the issuing office. They told me that they could not get it. They said there was no way that the issuing office would give it to a friend.

13. I have also called the Iranian Interest Section and asked them if there was any way that they would issue the birth certificate. They told me that they have nothing to do with that and they cannot do anything to help my brother.

14. We are doing everything we can to get the documents the government wants us to get in order to get my brother out of jail because he is really suffering and we are very worried about his heart. He has a very delicate heart and this prolonged detention is taking a serious toll on his health. I am doing everything I can to help him obtain the documents the government wants but unfortunately, I have not been able to get any new original documents.

I declare under penalty of perjury that the foregoing statement is true to the best of my own personal knowledge. Executed on this _9th_ day of February 2007 at _San Francisco_, California.

Mahnaz ~~Shams~~ Depp
Declarant

I, Homa Soroor do hereby declare the following to be a true and correct statement to the best of my recollection:

1. I am Djafar Shams' wife. Djafar and I were married on September 22, 2006 in Reno, Nevada. I was born in Iran and am a naturalized United States citizen.

2. I have searched my house in Yerba Linda for proof of how Djafar mailed his passport to the Iranian Interest Section. I have not found anything relating to any certified, registered or Federal Express mail sent to the Iranian Interest Section. But, before Djafar and I started dating, he did not keep any copies of anything, including bills that he paid. I made him start keeping a filing system so that he would have copies of things he received and things he mailed. So, he may not have kept the receipt since he did not keep receipts before we started dating.

3. Djafar's sister, Nazee, and I also went to the apartment Djafar and I have in Mountain View. We searched the apartment very thoroughly as well. We could not find any shred of paper that related to the passport or the Interest Section of Iran there either.

4. Djafar and I have spent a lot of time since his release request was denied talking about how he mailed the passport to the Interest Section. He says he remembers sending it registered mail through the post office. Although his memory is not very good, he does seem to be pretty clear on this.

5. I know Djafar has also been trying to get his birth certificate since the Interest Section said they needed his original birth certificate. I put money on the books at Santa Clara jail so that Djafar could purchase phone cards in jail and call Iran. He said his daughters from his first marriage might know where his birth certificate is since they sent him a photocopy of the birth certificate in order to apply for asylum years ago.

6. Djafar says that he's called and talked to his daughters three times. (Each phone card costs $20 and allows him to call Iran for 6 minutes.) He told me his daughters say that they have searched the house and they cannot find his birth certificate. He has told me in the past that his daughters move on a every year more or less because the cost of rent keeps going up, forcing them to move. It is possible his birth certificate was lost in one of their moves but we don't really know.

7. We are doing everything we can to get the documents the government wants us to get in order to get my husband out of jail because he is really suffering and I am very worried about his heart. He has a very delicate heart and this long time in jail is really bad for his health. It hurts me so much to see my husband suffering like this when he has no criminal history at all and he has always tried to do what the immigration service told him to do. I know he reported faithfully to immigration and he sent his passport to the Interest Section as requested. It strikes me as completely unjust that he is still detained. And it breaks my heart to know how much he is suffering and how little there is that I can do to help him.


I declare under penalty of perjury that the foregoing statement is true to the best of my own personal knowledge. Executed on this ___9th___ day of February 2007 at _San Francisco_, California.

Homa Sooror
Declarant